## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 24 2020, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Amy E. Karozos
Public Defender of Indiana

Victoria Christ
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Daimia Anderson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

August 24, 2020

Court of Appeals Case No.
20A-PC-585

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D06-1408-PC-125

**Najam, Judge.**

# Statement of the Case

Daimia Anderson appeals the post-conviction court's denial of her petition for post-conviction relief. Anderson raises two issues for our review:

> 1. Whether the post-conviction court erred when it concluded that she did not receive ineffective assistance of trial counsel.
>
> 2. Whether the post-conviction court erred when it concluded that she did not receive ineffective assistance of appellate counsel.

We affirm.

# Facts and Procedural History

In Anderson's direct appeal, this Court stated the facts and procedural history as follows:

> At approximately 10:00 p.m. on March 21, 2004, Sarlaji Warren went to the Hillcrest Bowling Alley in Fort Wayne. After midnight, when the bowling alley closed, Sarlaji and her friends drove to Jazmin's, a nearby bar. Suemiko Underwood was driving, Rydrikia Warren was in the front seat, and Sarlaji and Kandice McGown were in the back seat. When the young women arrived at the bar, they parked in [a] nearby parking lot, sat in the car[,] and talked.
>
> Five to ten minutes later, Anderson and Tara Meriweather arrived in the same parking lot. Meriweather was driving and Anderson was in the passenger's seat. Meriweather stopped her car directly in front of Underwood's car. McGown exited the car and approached Meriweather's car. When McGown and

Meriweather exchanged words, Anderson pulled out a gun and fired two shots into the air. McGown returned to the car where her friends were waiting, and Meriweather drove her car to the back of Underwood's car. Anderson pulled out a gun and fired a shot into Underwood's car. The back windshield shattered, and the bullet hit Sarlaji in the back of the head. She died two days later.

Anderson was charged with murder for killing Sarlaji, criminal recklessness for firing the two shots in the air, and carrying a handgun without a license. At trial, witness Chiquitia Warren testified that Anderson fired the gun straight at Underwood's car. In addition, McGown testified that Anderson was holding the gun "straight out" when she fired it at Underwood's car. Tr. P. 451. Anderson admitted firing the two shots in the air. However, she testified that after she fired those shots, she was just "messing with" the gun, and it went off. Tr. P. 767. A jury convicted Anderson as charged.

Appellant's App. Vol. 2 at 241-42. The trial court entered judgment of conviction and sentenced Anderson to an aggregate term of sixty-one and one-half years, including a five-year enhancement under Indiana Code Section 35-50-2-11 for Anderson's use of a firearm during the commission of the murder. On direct appeal, Anderson raised one issue for our review, namely, whether the State had presented sufficient evidence to support her murder conviction. We affirmed her conviction.

[4] In April 2018, Anderson filed an amended petition for post-conviction relief. In that petition, Anderson alleged that she had received ineffective assistance from both her trial and appellate counsel. After a fact-finding hearing, the post-

conviction court entered findings of fact and conclusions of law in which it denied Anderson's petition for post-conviction relief. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

Anderson appeals the post-conviction court's denial of her petition for post-conviction relief. Our standard of review in such appeals is clear:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 274. In order to prevail on an appeal from the denial of post-conviction relief, a petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the

defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694).

*Humphrey v. State*, 73 N.E.3d 677, 681-82 (Ind. 2017).

### Issue One:  Trial Counsel

Anderson first asserts that the post-conviction court erred when it denied her petition because she received ineffective assistance of trial counsel. Anderson alleges ineffective assistance from her trial attorney on four grounds. Anderson alleges that counsel:  should have asserted a self-defense argument at trial in addition to her defense alleging accident; should have tendered a voluntary manslaughter instruction; should not have alluded to Meriweather's invocation of her Fifth Amendment right against self-incrimination; and should not have waived Anderson's right to a jury trial on the sentence enhancement. We address each contention in turn.

### Self-defense

Anderson contends that her trial counsel's performance was deficient because he did not know that Indiana law permits a defendant to simultaneously assert the defense theories of self-defense and accident. *See Gunn v. State*, 174 Ind. App. 263, 65 N.E.2d 1234 (1977). During trial, after Anderson had testified

that she had not seen Sarlaji the night of the shooting and that she had only accidentally fired the gun that killed Sarlaji, the State moved to strike evidence that had already been presented by Anderson showing that she had shot Sarlaji in self-defense.[1] Anderson's trial counsel argued that the evidence showed self-defense, but the trial court granted the State's motion. And the court subsequently denied Anderson's proffered jury instruction on self-defense. In her post-conviction petition, Anderson asserted that, had trial counsel supported his argument to the trial court with a citation to *Gunn*, the court would have permitted Anderson to pursue both theories of self-defense and accident. Further, Anderson maintains that trial counsel was deficient for not making the same argument in support of her proffered self-defense jury instruction when the trial court denied it.

[8] As our Supreme Court has stated,

> [a] valid claim of self-defense is a legal justification for an otherwise criminal act. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). "A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2 (200[4]). A claim of self-defense requires a defendant to have acted without fault, been in a place where he or she had a right to be, and been in reasonable fear or apprehension of bodily harm. *White v. State*, 699 N.E.2d 630, 635 (Ind. 1998).

---

[1] The trial court had permitted Anderson to present evidence that she had a protective order against Sarlaji, as well as threatening voicemail messages from Sarlaji "in the days before the crime[.]" Appellant's Br. at 43.

\* \* \*

> The 'reasonableness' of a defendant's belief that he was entitled
> to act in self-defense is determined from that point in time at
> which the defendant takes arguably defensive action. That belief
> must be supported by evidence that the alleged victim was
> imminently prepared to inflict bodily harm on the defendant.

*Henson v. State*, 786 N.E.2d 274, 277-78 (Ind. 2003).

[9] The post-conviction court concluded, and we agree, that the evidence presented at trial, including Anderson's own testimony, showed that she "was not lawfully acting in self-defense." Appellant's App. Vol. 2 at 149. While she may have been in a place where she had a right to be, the evidence does not show either that Anderson acted without fault or that she had a reasonable fear of bodily harm. *See Henson*, 786 N.E.2d at 277. First, Anderson testified at trial that she did not know Sarlaji was in the car when she fired the gun at the car. Thus, to the extent Anderson now claims she was defending herself against Sarlaji, that claim is simply not credible.

[10] Second, "'[t]he amount of force used to protect oneself must be proportionate to the urgency of the situation.'" *Brand v. State*, 766 N.E.2d 772, 777 (Ind. Ct. App. 2002) (quoting *Hollowell v. State*, 707 N.E.2d 1014, 1021 (Ind. Ct. App. 1999)), *trans. denied*. "'Where a person has used more force than necessary to repel an attack the right to self-defense is extinguished, and the ultimate result is that the victim then becomes the perpetrator.'" *Id.* Anderson does not contend in her brief on appeal that her firing the gun was "proportionate to the urgency

of the situation." *See id.* Indeed, at trial, Anderson testified that she was scared for her life because a crowd of people had surrounded the car, but she testified that no one else had a weapon and that they were making only verbal threats towards her. Anderson was sitting in the car when she fired the gun, after which Meriweather drove Anderson away from the scene. We cannot say either that Anderson acted without fault or that she had a reasonable fear of bodily harm. *See Henson*, 786 N.E.2d at 277.

[11] This Court has stated that "[c]ounsel will not be held deficient for not pursuing a defense which appears contrived or totally unrealistic." *Wilson v. State*, 565 N.E.2d 761, 765 n.2 (Ind. Ct. App. 1990). Given the dearth of evidence to support a self-defense theory, we hold that Anderson has not demonstrated either that she was entitled to a jury instruction on self-defense or that her trial counsel's performance was either deficient or prejudiced her.

*Voluntary Manslaughter Instruction*

[12] Anderson next contends that her trial counsel should have proffered a voluntary manslaughter instruction. Anderson maintains that there was "appreciable evidence" that she had acted under sudden heat such that "voluntary manslaughter was a stronger alternative to reckless homicide, especially after the Court excluded her self-defense evidence and instruction." Appellant's Br. at 45-46. Anderson asserts that the jury would not have convicted her of murder had it been instructed on voluntary manslaughter.

[13] On this issue, the post-conviction court found as follows:

> [Trial counsel] tendered an instruction on reckless homicide as a lesser included offense of murder; the Court decided to give that instruction upon finding that there was a serious evidentiary dispute as to whether "the lesser offense of reckless homicide was committed and not the greater offense of murder." Tr. 867-868. [Trial counsel] did not request an instruction on voluntary manslaughter as a lesser included offense of murder. At the post-conviction hearing, [trial counsel] testified that the decision to argue for conviction of reckless homicide as a lesser included offense, and not to pursue voluntary manslaughter as a possible alternative, was made after extensive consultation with [Anderson], and that she herself favored an argument for reckless homicide and not for voluntary manslaughter. Record of Hearing on Post-Conviction Relief Held on December 21, 2018, at 7-8.

Appellant's App. Vol. 2 at 144. And the post-conviction court concluded that trial counsel made a reasonable strategic decision to proffer a reckless homicide instruction instead of a voluntary manslaughter instruction.

[14] As the State points out, counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. *Lambert v. State*, 743 N.E.2d 719, 730 (Ind. 2001). At trial, Anderson testified that the gun "went off" while she was "messing with it." Trial Tr. Vol. 4 at 19. That testimony is inconsistent with an assertion that she acted under sudden heat when she shot Sarlaji. In light of the evidence presented at trial supporting a voluntary manslaughter instruction, we cannot say that trial counsel's strategy constituted deficient performance. Indeed, Anderson's argument on appeal does not address the post-conviction court's conclusion that her trial counsel acted reasonably in not asking for a reckless-homicide instruction after

discussions with Anderson leading up to trial. We will not second-guess a trial counsel's reasonable trial strategies. Accordingly, Anderson has not met her burden on appeal to demonstrate that the post-conviction court's judgment is contrary to law on this issue.

*Meriweather's Decision Not to Testify at Trial*

[15] During closing argument, Anderson's trial counsel stated in relevant part as follows:

> In a few moments, the State will have the right to rebut, get the last chance to try to convince you that their picture is not blurred. Don't let them fool you. You've listened to all the evidence. [Counsel for the State], if you didn't believe [Anderson's] testimony, the Judge asked you, "Do you have any rebuttal." "No." Pastor Latham was there. Pastor Jordan was at the police station. [The State] didn't call them to rebut anything. [The State] didn't call Tara Meriwether.
>
> State: Objection Your Honor.
>
> Court: Sustained.

Trial Tr. Vol. 4 at 173-74 (emphasis added). In her post-conviction petition, Anderson asserted that her trial counsel was ineffective because she brought up the fact that Meriweather did not testify, which prompted the trial court to instruct the jury "to disregard [defense] counsel's comment" and that Meriweather had "exerted her Fifth Amendment privilege not to testify and incriminate herself." *Id.* at 923. Anderson pointed out that she was harmed because that instruction supported a reasonable inference "'that the withheld

testimony would be damaging, not only to the witness, but also to the defendant.'" Appellant's App. Vol. 2 at 104 (quoting *Aubrey v. State*, 261 Ind. 692, 310 N.E.2d 556, 558-59 (1974)).

[16] The post-conviction court agreed with Anderson, as do we, that trial counsel's performance was deficient in this regard, but the court found that Anderson had not shown prejudice. In particular, the court found:

> [Anderson] has not presented any argument purporting to establish a reasonable probability that this error had any effect on the outcome of the proceeding. . . .
>
> [Anderson] does assert that "[Meriweather's] refusal to testify 'may well have been the equivalent in the jury's mind of testimony,'" but [she] does not venture to specify what testimony it may well have the equivalent of. In view of the evidence presented at trial, the jury could have conjectured that Tara Meriweather might have said highly incriminating things had she testified—such as that [Anderson] went to Jazmin's intending to kill Sarlaji Warren lest Sarlaji kill her first, and that she decided to fabricate a defense of accident, self-defense, or both. But the reasons for these particular conjectures would have been obvious: [Anderson's] own testimony abundantly supported them, and her testimony was far less credible than that of the State's witnesses. [Anderson] has presented no argument, and none can be imagined, tending to show a reasonable probability that the conjectures led to her conviction or murder when the evidence alone would not have done so.

Appellant's App. Vol. 2 at 155-56 (citations omitted).

[17] On appeal, Anderson maintains that she was harmed

> because the natural inference the jury would have is that
> [Meriweather] would incriminate herself if she had testified. She
> drove [Anderson] to the scene, she was with her the entire time
> and she helped her evade arrest for a short time. . . . Though
> [Meriweather] could have corroborated [Anderson's]
> justifications[ for the shooting], she did not. . . . The
> admonishment not only reinforced [Meriweather's] failure to
> corroborate [Anderson] but it implied she would not have done
> so. . . .

Appellant's Br. at 51-52. But Anderson does not address the post-conviction court's finding that she did not adequately make that argument in her petition, and our review of the petition supports the court's finding on this issue. Her mere allegation that the jury could have inferred that Meriweather would have incriminated Anderson, without more, is insufficient to show prejudice. Indeed, in light of the overwhelming evidence of Anderson's guilt, including her own testimony and that of the State's nine eyewitnesses, we agree with the State that any error was harmless. We cannot say that the post-conviction court erred when it found that trial counsel's performance did not prejudice Anderson on this issue.

### *Waiver of Right to Jury Trial*

[18] Anderson contends that her trial counsel was ineffective when he did not object to the trial court's determination that bifurcation on the issue of the firearm enhancement was unnecessary "because by finding her guilty of murder, [the jurors] have necessarily found that she used a firearm in the commission of that specifically named crime." Appellant's App. Vol. 2 at 229. Anderson

maintains that she was entitled to a jury trial on the enhancement under Indiana Code Section 35-50-2-11. She asserts that her trial counsel's deficient performance prejudiced her because he "forfeited her right to argue for acquittal on the enhancement." Appellant's Br. at 55.

[19] First, Anderson has not shown that her trial counsel's performance was deficient in this regard. Second, Anderson cannot show prejudice. As the trial court declared, and as the post-conviction court found, because the jury had convicted Anderson of murder, and because the evidence was undisputed that the murder was committed with a firearm, that a jury would have found the evidence sufficient to support the enhancement was all but a foregone conclusion. Indeed, Anderson did not testify at the post-conviction hearing that she would not have waived her right to a jury trial on the enhancement. The post-conviction court did not err when it found that Anderson's trial counsel was not ineffective when he agreed to waive a jury trial on the firearm enhancement.

### Issue Two: Appellate Counsel

[20] Anderson next argues on appeal that she received ineffective assistance from her appellate counsel when her appellate counsel did not raise on direct appeal the following three issues: waiver of the right to a jury trial on the firearm enhancement; Anderson's right to present her self-defense; and the trial court's refusal to instruct the jury on self-defense. We address each contention in turn.

[21] As we have explained:

As with trial counsel, to establish that appellate counsel rendered ineffective assistance, a petitioner must show appellate counsel was deficient in performance and that the deficiency resulted in prejudice. *Ritchie v. State*, 875 N.E.2d 706, 723 (Ind. 2007). However, appellate and trial counsel have different tasks, which result in different kinds of deficient performance and prejudice. Thus, when the alleged error is that appellate counsel failed to raise issues, prejudice is based on "whether the issues appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial." *Id.* at 724.

*Benefield v. State*, 945 N.E.2d 791, 802-03 (Ind. Ct. App. 2011).

## *Jury Trial Waiver*

[22] Anderson first contends that she was denied the effective assistance of appellate counsel because, had counsel argued on direct appeal that Anderson had not waived her right to a jury trial on the firearm enhancement, this Court would have remanded for a jury trial on that issue. In particular, Anderson asserts that she had a right to a jury trial on the enhancement under Article 1, Section 12 of the Indiana Constitution and that her personal waiver was required but not obtained. Thus, she maintains that the absence of her personal waiver required reversal of the enhancement.

[23] In *Horton v. State*, our Supreme Court observed that, since 1977, "Indiana precedent has repeatedly affirmed the personal waiver requirement" for the right to a jury trial "in a felony prosecution." 51 N.E.3d 1154, 1158 (Ind. 2016) (emphasis added). Anderson does not cite any case law to show that, as a matter of Indiana constitutional law, the personal waiver requirement applies to

sentencing enhancements. Thus, Anderson has not shown that her appellate counsel's performance was deficient when he did not raise this issue on direct appeal.

[24] For the first time in her reply brief, Anderson acknowledges that the firearm enhancement statute, Indiana Code Section 35-50-2-11, did not afford a right to a jury trial until April 2005, or six months after her trial. Also in her reply brief, Anderson maintains that her appellate counsel "could have reasonably argued Anderson was deprived of her right to a jury trial despite the statute's wording" as a matter of federal constitutional law based on the holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). Reply Br. at 6.

[25] Anderson has waived the issue of a federal constitutional violation for our review in two respects. First, "[t]he law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005). Second, Anderson did not make this argument to the post-conviction court. Waiver notwithstanding, and moreover, our courts do not require appellate counsel to pursue novel arguments on appeal. In particular, our Supreme Court has held that "an appellate lawyer would not be ineffective for proceeding without adding a *Blakely* claim before *Blakely* was decided." *Walker v. State*, 843 N.E.2d 50, 59 (Ind. Ct. App. 2006), *trans. denied*; *cert. denied*, 549 U.S. 1130 (2007). And this Court has observed that "[e]ven after *Apprendi* was decided, there was no basis for [appellate

counsel] to believe that *Apprendi* had any impact upon [a defendant's] jury trial waiver and sentence." *Wieland v. State*, 848 N.E.2d 679, 682 (Ind. Ct. App. 2006), *trans. denied*; *cert. denied*, 549 U.S. 1038 (2006). Thus, Anderson has not shown that her appellate counsel was ineffective when he did not raise this issue on direct appeal.

### *Self-Defense*

With respect to Anderson's assertion that appellate counsel should have raised on appeal both her right to assert self-defense and the trial court's alleged abuse of discretion in refusing a self-defense instruction, for the reasons set out above, Anderson's own testimony undermined her allegation that she acted in self-defense. Because the evidence, as a whole, presented at trial did not support a self-defense theory, Anderson cannot show either that her appellate counsel's performance was deficient or that the outcome of her appeal would have been different had these issues been raised. The post-conviction court did not err when it concluded that Anderson was not denied the effective assistance of appellate counsel.

### *Conclusion*

In sum, we affirm the post-conviction court's judgment.

Affirmed.

Bradford, C.J., and Mathias, J., concur.